In re The CIRCLE K CORPORATION; Circle K Convenience Stores, Inc.; Circle K Management Company; Lar–Lin, Inc.; First Circle Properties, Inc.; Utotem, Inc.; Utotem Markets of Arizona, Inc.; U Totem of Alabama, Inc.; U–Tote'm of Colorado Inc.; U–Tote'm of Miami, Inc.; Tic Toc Systems, Inc.; Monterre Properties, Inc.; Shop & Go, Inc.; Circle K General, Inc.; Circle K Hawaii, Inc.; Combined Aviation Co.; Charter Marketing Company (Connecticut); Charter Marketing Company; Mr. B's Oil Co., Inc.; Mr. B's Food Mart, Inc.; NPI Corporation; Old Colony Petroleum Company, Inc.; New England Petroleum Distributors, Inc.; and 44th Street & Camelback Limited Partnership, Debtors.

S.N. PHELPS & COMPANY, Commonwealth Oil Refining Company, Inc. and Realmark Holdings, Inc., Plaintiffs,

v.

The CIRCLE K CORPORATION and its affiliated companies, and CK Acquisitions Corp., Defendants.

Bankruptcy Nos. B–90–5052–PHX–GBN to B–90–5075–PHX–GBN. Adv. No. 93–1123–GBN.

United States Bankruptcy Court, D. Arizona.

Aug. 23, 1994.

D.J. Baker, Weil, Gotshal & Manges, Houston, TX, Susan G. Boswell, Streich Lang, P.A., Phoenix, AZ, for defendants/debtors.

Mitchell A. Karlan, Gibson, Dunn & Crutcher, New York City, for defendants.

Richard L. Epling, Winthrop, Stimson, Putnam & Roberts, Thomas F. Puccio, New York City, for plaintiffs.

## MEMORANDUM OF DECISION

GEORGE B. NIELSEN, Jr., Chief Judge.

### I

Plaintiffs are debenture holders asserting claims against debtors in the approximate amount of $90 million. Under the terms of a Chapter 11 reorganization plan confirmed on June 16, 1993, Circle K was sold to CK Acquisitions Corporation for $399.5 million in cash. CK Acquisitions Corporation was controlled by an investment entity known as Investcorp.

In a timely filed complaint under 11 U.S.C. § 1144, plaintiffs alleged defendants perpetrated a fraud during confirmation of debtors' plan. The amended complaint charges defendants concealed the fact management would hold an equity stake in the reorganized debtor post-confirmation. Plaintiffs

further allege defendants falsely represented that the only post-confirmation owners of the reorganized debtors would be Investcorp, its affiliates and certain Middle Eastern investors. Amended Complaint at 17–19; 23–27, placed under seal by stipulation. Plaintiffs also complain defendants falsely represented the value of Circle K in the confirmation process. *Supra* at 20–21, 28–31.

These same parties participated in an appeal of the confirmation order. In an unpublished memorandum decision filed March 15, 1994, the Ninth Circuit affirmed the District Court dismissal of plaintiffs' appeal. *S.N. Phelps & Co., et al. v. The Circle K Corp., et al. (In re The Circle K Corporation, et al.)*, No. 93–16278, 1994 WL 83319.[1] The Circuit concluded that, given the lack of a stay pending appeal, the confirmation process had sufficiently advanced that effective relief could not be fashioned if appellants prevailed. Memorandum at 3–5.

Defendants now move to dismiss plaintiffs' adversary complaint on the same mootness grounds. This Court must accept as true, all the complaint's allegations in their entirety,[2] and draw all reasonable inferences in favor of plaintiffs. *Pelletier v. Federal Home Loan Bank of San Francisco*, 968 F.2d 865, 872 (9th Cir.1992). Even given such favorable inferences, the Court concludes this timely section 1144 complaint should nevertheless be dismissed for mootness.

## II

■ Contrary to plaintiffs' argument, neither Civil Rule 60(b)(3), Fed.R.Civ.P., nor 11 U.S.C. § 105(a) apply in this adversary. The complaint and prayer are exclusively premised on section 1144. Although plaintiffs included the pro forma "such other and further relief as this Court may deem just and proper" in their prayer, this is an insufficient vehicle for now asserting additional theories in response to the dismissal motion.

1. This unpublished memorandum opinion, involving the same parties and same bankruptcy case as is before this Court, is cited because movants invoked the doctrine of law of the case in their papers. *See* Ninth Circuit Rule 36–3.

2. In a separate motion, defendants argue, *inter alia*, the second amended disclosure statement,

An order confirming a Chapter 11 reorganization plan may be revoked only in accordance with 11 U.S.C. § 1144. *Dale C. Eckert Corp. v. Orange Tree Associates, Ltd. (In re Orange Tree Associates, Ltd.)*, 961 F.2d 1445, 1447 (9th Cir.1992).

Section 1144 affects the rules of procedure by constraining the power of the court to revoke a confirmation order as a form of relief from a judgment or order under [Rule] 60(b). The 180–day limitation is implemented at [Rule] 9024, which provides in pertinent part:

"Rule 60 ... applies in cases under the Code except that ... a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144...."

*Official Committee of Unsecured Creditors v. H.B. Michelson (In re H.B. Michelson)*, 141 B.R. 715, 723 (Bankr.E.D.Cal.1992).

The result is that Congress reduced from 1 year to 180 days the time for revoking a confirmation order under Civil Rule 60(b)(3). *Id.*

Although courts have held that other remedies may be available to creditors injured by fraud, such as a separate damages action, *In the Matter of Newport Harbor Associates*, 589 F.2d 20, 24 (1st Cir.1978), the complaint in the instant case is exclusively grounded on section 1144. The Court should examine that section in determining whether to grant the motion to dismiss, not other remedies raised by plaintiffs for the first time in response to defendants' motion.

Section 1144 provides that upon the timely request of a party in interest,

[T]he court may revoke such [confirmation] order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall

following objections from the debenture holders and negotiations, was supplemented by information concerning an equity option management incentive program. Motion for Summary Judgment as to elements of fraud filed April 22, 1994, at pp. 3–8, Docket No. 59. That factual defense is not considered in this Rule 12(b) ruling.

(1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and

(2) revoke the discharge of the debtor.

Circle K argues this adversary must be dismissed because the Court cannot fashion any remedy under section 1144. Thus, the adversary is deemed moot. Plaintiffs argue there are numerous remedies that can be fashioned.

### III

■ Mootness is premised on the principle federal courts hear only live controversies. If a court finds for plaintiff, but it is impossible to grant effectual relief, the court will not proceed to judgment, but will dismiss the matter as moot. *Chang v. Servico, Inc. (In re Servico, Inc.),* 161 B.R. 297, 300 (S.D.Fla.1993). *Servico* dealt with a district court appeal of the dismissal of a section 1144 action.

■ Does the concept of "mootness" apply in a section 1144 action pending in Bankruptcy Court? In *Servico,* the Bankruptcy Court had ruled it was unable to fashion effective relief under section 1144 to protect those who relied on the confirmation order. *Supra,* at 300. On appeal, the district court recognized there was a "slight difference" between confirmation order appeals and appeals from section 1144 rulings. *Id.* However, "that difference does not render meaningless the constitutional requirement that federal courts may only hear live controversies. Therefore, the doctrine of mootness does apply in section 1144 cases if the reorganization plan has been substantially consummated and no effective relief can be fashioned." *Id.* at 300–301.

Defendants make much of the Ninth Circuit ruling that the plan is so far implemented it was impossible to fashion effective relief. *Phelps* at 3. Plaintiffs correctly note the Circuit was focusing on an appeal of the confirmation order, not a pending section 1144 complaint.

■ In *Servico, supra,* the court stated the mootness doctrine applies in a section 1144 action if the plan is substantially consummated and no effective relief can be fashioned. 161 B.R. at 300–301. Central to any mootness finding is whether effective relief can be granted. *First Union Real Estate Equity and Mortgage Investments v. Club Associates (In re Club Associates),* 956 F.2d 1065, 1069 (11th Cir.1992). The Court must examine whether it can fashion an order that would revoke debtor's discharge, restore the status quo existing before confirmation and protect those who relied in good faith on confirmation.

Section 1144 recognizes that revocation of a Chapter 11 plan impacts innocent third parties. Congress knew a plan will be at least partially implemented when a revocation order is entered.

The statutory language expressly considers that parties rely on a confirmation order. That arguably could distinguish this case from the *Phelps* appeal. The Ninth Circuit was not required to address section 1144's language and instead was reviewing a direct appeal, which, if successful, would undo the reorganization.

■ Although section 1144 anticipates a plan is at least partially implemented, a court cannot ignore the extent of that implementation in determining whether it can fashion relief. How far debtors progressed in plan implementation is examined and balanced against the practical ability to protect innocent parties.

### IV

■ In this case, many transactions have taken place since confirmation. As noted in *Phelps,* after all stays expired, CK Acquisitions paid $395,000,000 to the disbursing agent and received newly issued stock in the reorganized debtors. Old stock was canceled. CK Acquisitions borrowed $235,000,000 from banks that were not parties to the appeal. Debtors and their subsidiaries underwent mergers. The disbursing agent made distributions to the bank group, senior secured noteholders and unsecured creditors. Workers' compensation suits, stayed during the case, have begun proceeding forward. Trade creditors commenced doing business

with the reorganized debtors. Memorandum at 3–4.

Plaintiffs argue creditors who received the bulk of disbursements were parties to the appeal. Even if so, the $10 million paid to unsecured creditors and $3.9 million paid to environmental claimants could not be returned to the estate. Another $11,600,000 can not be disturbed without jeopardizing settlements. These parties did not participate in the appeal. This inability to undue that which had been done precluded the Appellate Court from fashioning effective relief. *Supra* at 4.

The situation confronting this Court is even more difficult. The effect of section 1144 is to revoke the discharge and place Circle K in the position it occupied before confirmation. This is glossed over by plaintiffs, who foresee quick revocation of discharge, amendment of the plan to their satisfaction, and reconfirmation of the amended plan.[3] Missing in this analysis is the fact such procedure requires new disclosures and findings the new or amended plan meets all section 1129 elements. Plaintiffs' plan can be attacked by adverse parties on any basis provided by law. Prompt confirmation appears speculative.

It is difficult to envision how the Court could vacate the order and protect the numerous entities which relied on confirmation. This case is not remotely like *Spirtos v. Moreno (In re Spirtos)*, 992 F.2d 1004, 1007 (9th Cir.1993), where the court found the mootness doctrine was not applicable. In that case, debtors claimed an exempt interest in pension plans. The bankruptcy court ruled the plans were exempt. Creditor appealed, but did not obtain a stay. The Bankruptcy Appellate Panel reversed. By this time, debtors had stripped the plans of their assets. *Supra* at 1006.

The Court of Appeals found it could fashion effective relief by ordering debtor, a party to the appeal, to return the money. Debtor had notice of the appeal long before the assets were distributed. Accordingly, the appeal was not moot. *Id.* at 1006–07.

Here, once the stays were no longer in effect, debtors implemented the plan. At stake was a substantial asset transfer, which required borrowing $235,000,000 from banks that are not parties to this complaint. This case is unlike *Spirtos*, which involved one party expending assets which were later held to belong to the estate.

Nor are these circumstances comparable to *Oxford Life Insurance Co. v. Tucson Self–Storage, Inc. (In re Tucson Self–Storage, Inc.)*, 166 B.R. 892 (9th Cir. BAP 1994). There, in reliance on plan confirmation, debtor obtained a $92,000 loan from insiders and disbursed $30,026 to appellant, $75,531 to a junior lienholder and paid all priority and administrative claims. 166 B.R. at 895. The panel refused to conclude the appeal was moot since the money disbursed represented only a small portion of the total to be paid under the plan. *Supra* at 896. Effective relief could be structured by remanding with instructions to return any erroneously disbursed funds. *Id.* That is not this case, with millions disbursed to many nonparty creditors.

## V

The Court concludes that although plaintiffs timely filed their complaint, the confirmation process has sufficiently advanced that effective relief cannot be fashioned, even if plaintiffs prevail. The motion to dismiss is granted. The complaint and cause of action are dismissed.

---

**3.** Plaintiffs cited *Michelson* for the following: the confirmation order can be revoked per section 1144 and "it can be otherwise modified." 141 B.R. at 720. Presumably the court referred to post-confirmation plan modifications. If this is what plaintiffs here propose, *i.e.,* modification of the existing plan, rather than creation of a new plan, it is noted a confirmed plan cannot be modified if it has been substantially consummated. 11 U.S.C. § 1127(b).