**In re E–H FARMS, Debtor.**

**Bankruptcy No. 98–51181–11.**

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Sept. 9, 1999.

R. Byrn Bass, Jr. Harding, Bass, Fargason, Booth & St. Clair, Lubbock, TX, for debtor.

Robert L. Jones, Crenshaw, Dupree & Milam, Lubbock, TX, for Ag Services.

### MEMORANDUM OF OPINION ON PLAN CONFIRMATION

JOHN C. AKARD, Bankruptcy Judge.

E–H Farms, a partnership, seeks confirmation of its Chapter 11 plan. Both partners recently received a discharge in their Chapter 7 cases.[1] The plan contains a

---

1. This case could be referred to as a "Chapter 25" (7+7+11=25). The parties state their research indicates that this is a case of first impression.

provision that its confirmation will not impose any personal liability on the partners. A creditor objected to confirmation asserting that such a provision violates the Bankruptcy Code. The court finds that the plan cannot be confirmed.[2]

## FACTS

E–H Farms, a partnership, (Debtor) filed for relief under Chapter 11 of the Bankruptcy Code on October 5, 1998. Dwain Ellerd and Randy Hargrove are the Debtor's sole partners. The partnership is engaged in farming and trucking agricultural products.

Mr. Hargrove and his wife filed for relief under Chapter 7 of the Bankruptcy Code on January 22, 1999. They received a discharge on May 24, 1999 and the case is closed. Mr. Ellerd and his wife filed for relief under Chapter 7 of the Bankruptcy Code on April 14, 1999. They received a discharge on August 30, 1999. Both the Ellerds and the Hargroves listed all of the partnership debts in their personal bankruptcy petitions. No one objected to the discharge or dischargeability of those debts. Therefore, they have no personal liability on them. Both partners claimed their interest in the Debtor as exempt and no objections to the exemptions were filed. Consequently, they remain the sole partners of the Debtor.

The Debtor seeks confirmation of its First Amended Plan of Reorganization (Plan) filed on July 15, 1999. The First Amended Disclosure Statement filed July 15, 1999 valued the Debtor's assets at approximately $1.2M and listed its liabilities at approximately $1.8M. The disclosure statement noted that the Debtor valued the assets at what it considered to be market value, but they would probably bring much less if sold at liquidation. The disclosure statement listed general unsecured claims of approximately $127,000, but stated that when deficiency claims were included, the total would be approximately $590,000. Section II, subsection 10 of the Plan proposes to pay an annual dividend of at least $50,000 pro rata to the unsecured creditors. It states "if Debtor (more specifically its corporate successor in interest as hereinafter set forth) is able to pay more than $50,000.00 based on profits of the business, up to $100,000.00 will be paid."[3] Consequently, the Debtor estimated that over the five-year life of the Plan, the unsecured creditors would receive approximately 50% of their claims.

Two provisions of the Plan are at issue in this case:

ARTICLE IV. *Means for Execution of the Plan*

After confirmation of the Plan, a new corporation will be created incorporating Debtor's existing business under the name "E–H Farms, Inc.", assuming the name is name is (sic) available, or such other name as "Ellerd–Hargrove Farms, Inc.", if it is not available. Debtor's assets shall be conveyed to the new corporation subject to all liens created by or retained in the Plan. The new corporation shall assume all debt restructured and created in the Plan. Dwain Ellerd and Randy Hargrove (and their spouses) shall have no individual liability therefor having already received, by the time this Plan is confirmed, their discharge therefrom.

. . . .

ARTICLE VII. *Non–Recourse Debt*

The debt restructured by the Plan and assumed by the new corporation

---

**2.** This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(L).

**3.** Neither the Plan nor the disclosure statement give any indication as to how amounts in excess of $50,000 per year will be calculated.

referenced in Article VI(sic) is intended to be non-recourse as to partners Dwain Ellerd and Randy Hargrove (and their spouses). Both the Ellerds and the Hargroves are seeking (and by the time this Plan is confirmed will have received) their discharge from all of their dischargeable debts in their Chapter 7 cases. That includes all of the debts owed by them, jointly and severally, as partners in E–H Farms. It is also intended to include any restructure of that very same debt in this Plan. If this Plan fails, and E–H Farms is unable to make the payments provide (sic) for in this Plan, then the discharge of the Ellerds and the Hargroves in their respective Chapter 7 cases shall be extended to and include the debt of E–H Farms restructured in this Plan and assumed by the new corporation.

Ag Services of America, Inc. and Ag Acceptance Corporation (Ag Services) objected to confirmation on two grounds. The first objection was that the Plan did not adequately describe Ag Services' collateral. The Debtor agreed to correct that deficiency. The second objection is that the Plan impermissibly discharges third parties. Ag Services voted against the Plan, but acknowledged that the treatment of its claim in the Plan is such that the Plan could be confirmed over its objection pursuant to § 1129(b)(2)(A) of the Bankruptcy Code.[4]

Both the Internal Revenue Service and New Holland Credit Company objected to the Plan. The Debtor agreed to modifications which satisfied them and they accepted the Plan. All other secured creditors accepted the Plan and the unsecured class voted overwhelmingly in favor of it.

The Debtor asserts that the Plan is consistent with the discharges which the partners received in their Chapter 7 cases. An agricultural expert testified that a substantial reduction in the amount of property being farmed, profits in the trucking business, and good prospects for this year's crops will result in a successful operation. The Debtor asserts that the Plan offers a much better prospect for repayment to the creditors, both secured and unsecured, than would be achieved through a liquidation.

## DISCUSSION

■ The court first determines whether confirmation of a Chapter 11 plan simply rearranges old debt or creates new obligations. This court previously held that the order confirming a Chapter 11 plan is a new contract binding on both the debtor and the creditors. *In re Page,* 118 B.R. 456, 460 (Bankr.N.D.Tex.1990). *See also* § 1141(a). The prior obligations are discharged. § 1141(d)(1)(A).

What is the effect of the new debt created upon confirmation the Plan? The Texas Revised Partnership Act provides that "all partners are liable jointly and severally for all debts and obligations of the partnership unless otherwise agreed by the claimant or provided by law." TEX.REV.CIV.STAT.ANN. art. 6132b–3.03 (Vernon Supp.1999)[5]. Thus all creditors who voted for the Plan and who did not object to confirmation agreed that the partners will have no personal liability on the new debts.[6]

■ Ag Services objected to the Plan's deletion of the partners' personal liability, pointing to § 524(e) of the Bankruptcy Code which provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." In this case a debt is not being

---

4. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

5. The statute contains provisions concerning entering and leaving partners which are not applicable to this case.

6. Mr. Ellerd and Mr. Hargrove acknowledge that they remain personally obligated on the debt to the Internal Revenue Service.

discharged; rather, a debt is being created. Thus the facts of this case do not fit the literal language of § 524(e). However, this section expresses the clear intent of Congress that liabilities of third parties should not be discharged without the creditors' consent.

■ Can Ag Services' objection be overcome? Ag Services voted against the plan. A plan can be confirmed over the objection of a creditor if it meets the requirements of § 1129(b). There are two requirements for plan approval over a creditor's negative vote. First the plan must "not discriminate unfairly" and it must be "fair and equitable" to the creditor. § 1129(b)(1).[7] The "no personal liability" provisions of the Plan apply to all creditors, so there is no discrimination as to Ag Services and Ag Services agrees that its treatment under the Plan is fair and equitable.

Since the claim of Ag Services is fully secured, the Plan must meet the two additional requirements of § 1129(b)(2)(A)(i). First, the creditor must retain its lien. The Plan leaves Ag Service's lien intact. Second, the creditor must receive the allowed amount of its claim with interest. The Plan so provides.

Section 1129(b) does not address third party liability. Ag Services objects because the Plan denies it third party liability (the personal liability of Mr. Ellerd and Mr. Hargrove) to which it is entitled under the Texas statute. The fact that the Plan proposes to convey all partnership assets to a new corporation does not change the circumstances. It is the debt incurred by confirmation of the Plan which is at issue, not the fact that a corporation may subsequently agree to pay that debt.

## CONCLUSION

This court must honor the intent of Congress to preserve third party liability as

---

**7.** Ag Services is impaired since it is not being paid according to the terms of its original contract. *See* § 1124(1).

**8.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to

expressed in § 524(e) and the intent of the Texas Legislature that a creditor must agree to release a partner from partnership liabilities as expressed in art. 6132b–3.03. Therefore, confirmation of the Plan must be denied.

ORDER ACCORDINGLY.[8]

---

FED.R.BANKR.P. 7052 which is made applicable to Contested Matters by FED. R.BANKR.P. 9014. This Memorandum will be published.